case number 18-3955 Gary Hughbanks v. Stuart Hudson or arguments not to exceed 30 minutes per side Mr. David P. Williamson or the appellant. Mr. Williamson. Thank you your honor and may it please this honorable court again my name is David Williamson I'm from Dayton Ohio and I am co-counsel for petitioner Gary Hughbanks. My co-counsel is Mr. Dennis Seip from Marietta, Ohio who I believe is present online this afternoon. I wish to reserve five minutes time for rebuttal. Fine. On August 19th 2019 this court granted Mr. Hughbanks a certificate of appealability on two issues. The first is whether the prosecution withheld material evidence from the defense in violation of Brady v. Maryland which I will simply refer to during my argument as the Brady claim. And secondly whether trial counsel was ineffective during the penalty phase of the trial for failing to or inadequately investigating preparing and presenting a claim of ineffective assistance of counsel at the penalty phase of the of this capital case. I will first address the the Brady claim. In this particular case as the court knows that the standard of review is de novo for the legal conclusions of the district court denying habeas relief. The district court did not conduct an record wherein the state court also did not conduct an evidentiary hearing. Accordingly this court reviews the district court's factual findings also de novo. The categories of the particular evidence that was suppressed by the prosecution in this particular case have to do with first of all the presence of a application from the Springfield Township Police Department to the Federal Bureau of Investigation for assistance in investigating the case and then a subsequent report from the FBI. Now it's important for this panel to remember that this was a very cold case. The murders in this case took place in 1987 and the case went unsolved with but with a lot of investigation for a decade. And then finally what began then as an investigation of a suspect being Mr. Hugh Banks turned to the building of a case against Mr. Hugh by law enforcement during that long period of investigation much of it was not presented to trial counsel prior to the and if you'll excuse me I've misplaced some notes prior to the trial. First of all one of the categories is the identification of other suspects including one suspect who confessed to the murders, one suspect who confessed to breaking into the Lehman residence, one who sustained injuries at the time of the murder consistent with a struggle with someone with a knife, and a juvenile court finding of probable cause to believe that five juveniles may have been involved with the murders. And with regards to these particular confessions part of the warden's response has been well they're not linked to the murders. Well the problem is it's speculative as to whether they were or whether they weren't and it's not the prosecuting attorney's duty to speculate as to the admissibility of evidence at trial. Instead the prosecutor's duty under Brady is in my opinion analogous to a civil counsel's responsibility under the rules of discovery. You don't talk about admissibility you turn over what you have and the issue of admissibility is left up to the court later and if it's something that you have that is material and favorable to the defense you turn that over and if you've got something to argue about it because defense wants to use it at trial then you as the prosecutor worry about that later. But your first duty up front under Brady is if you look at evidence that is material and favorable to the defendant you turn that over. Now the district court kind of waves this off by talking about the fact that Mr. Eubanks confessed but I would point out as we do in our brief that so did the defendants in the other cases that this case was recognized and granted the kind of relief we're seeking and that's particularly Gumb versus Mitchell and Bies versus Shelton. Like those cases this case is very similar in that this really was all that the prosecution had in this case was relying upon Mr. Eubanks custodial statement. There was no physical evidence there was no eyewitness testimony and again as I point out this was a 10-year-old case and then this the custodial statement itself contained a number of inconsistencies some of which were not revealed until the federal habeas discovery and also a number of instances where details of the offense were provided by the examining detectives rather than volunteered by Mr. Eubanks himself. So if there's a question about the other confessions it also calls into question the credibility and accuracy of Mr. Eubanks statement as well. As I understand it one of the confessions that you're particularly relying on is the confession that somebody named Hayes made to somebody named Buster and my question to you is do we not require some kind of corroborating evidence to show that this is a reliable confession by Hayes and if that is the law what is the corroborating info Ray Hayes being the perpetrator? Your honor I would again go back to the point where that information and so the backup leg work by defense counsel to discover that should have been provided by the prosecutor so that that kind of investigation could have occurred but because it wasn't then we're speculating now by having to do the kind of work 10 years after the fact to find out if indeed we can corroborate Mr. Hayes's statement. So in other words there is no corroborating evidence at this point? The only corroboration is what is contained in in the record of who said what. So is the record this report from the polygraph unit is that what we're talking about? Yes your honor and as well as if my recollection serves me right I don't have it in front of me the recitation of facts by the Springfield Police Department to the FBI in searching or in seeking the support or the excuse me the involvement of of the FBI. So but in addition to to this point there's also the actions of the victim's son that were consistent then with the FBI profile and again we're not suggesting that the FBI profile was the truth but what we are suggesting is that the facts that were presented to the FBI that led to them to create a profile that certainly fits a suspect who the police look very closely at and that is the the victim's son Burt Lehman who met all of the bullet points for the FBI report. Remember the the FBI talked about that the burglary was staged it was the number of stab wounds would indicate it was somebody who knew and had anger against the victims and not a burglar trying to get in and quickly get out of the premises somebody who knew the house. One concern that that is raised about this FBI profile is whether there were newspaper reports at at that time that gave those theories as well that it was a staged burglary and and that somebody was angry with the victims. Were there newspaper reports that's indicated that? Your original petition post-conviction petition but in this we rely entirely upon the evidence that was collected during the federal habeas discovery and not upon those earlier newspaper clippings and in like manner when we talk about the favorable results of the the testing of the trace evidence that also comes about because of the federal discovery. We have a situation where the prosecutor tells defense counsel there were some prints found but not many were suitable and they were not comparable to anybody but what was not against the trace evidence and he was eliminated as a suspect so that the trace evidence was sufficient and suitable enough for use for eliminating suspects and in fact that's exactly what the state did over 200 suspects including Mr. Hubex so it's kind of disingenuous then for a trace evidence that would help identify the assailant but what he doesn't say is yeah but we did find something to eliminate suspects including this document. What's the document that we should refer to to find that the FBI thought that the fingerprint comparisons were sufficient to eliminate Mr. Hubex as a suspect because I don't really remember seeing that and I went through this the whole file of documents yesterday and I thought the point was that they couldn't link anybody given the fingerprint information they had. I didn't see that they had eliminated Mr. Hubex. What document should I be looking for? My recollection is that it is not in the FBI report that is in and I know I'm going to be using up my time looking for it but well maybe you can look for it while your adversary is speaking if you don't know what it is where it is. I'll do that thank you. Was Mr. Hubex actually eliminated as a suspect because they didn't find any of his fingerprints or did they just conclude that if he was the perpetrator he didn't leave any fingerprints at the scene? My understanding is that the bloody palm print that was found on suspects including Mr. Hubex prints. So your honor whether they found other prints of Mr. Hubex at the scene that would be news to me today. But Mr. Hubex gave conflicting statements as to whether he perpetrated the crime alone or whether he had cohorts with him. If he did have others with him someone else could have left that bloody hand print. Yes or it could have been left by someone who also confessed to the crime other than Mr. Hubex but what we don't know is or what we do know is that what was found the trace evidence that was found didn't match Mr. Hubex. Well that's different from saying it eliminated him as a suspect I think. Well your honor I agree but I believe that's a false positive and and we have to look at both sides of what is shared with and what the prosecutor's duty under Brady versus Maryland is and and for goodness sakes this is a capital case. Share everything that you have with the defense and let that either let the trial judge be the gatekeeper of what comes in and what does not come in in front of the jury but at least gives the defense an opportunity to see what you have instead of this misleading statement that well we didn't have anything that was suitable enough to make a comparison and what we did have didn't match your client Mr. Hubex. That's that's far different than saying wait a minute we did make a match it was suitable for comparison we were able to do a comparison and he and other suspects were eliminated. I think that's a very important fact that the jury should have been made aware of or at least at the very least for counsel to have had that information in order to make a strategic decision on what to do with it. Now in addition to that we've also got the the favorable eyewitness statements from people in the neighborhood who saw other individuals. This was not shared with defense counsel. Numerous reports of suspicious individuals a black man covered with blood exiting the woods behind the victim's house one carrying a knife or a machete a white man six foot six or six foot seven walking between the Lehman's residence and the next door neighbor and the warden's response is that's just the flotsam and jetsam of law enforcement and defense is not entitled to all of law enforcement product. We would agree defense is not entitled to all but what defense is entitled to is all that is favorable and material to guilt or sentencing in a capital case and this is a death penalty case. If anything a prosecutor when in doubt should err on the side of producing too much not too little if the prosecutor is providing extraneous material so what unless it is overly burdensome unless it is somehow does not meet the I believe strong dictates of Brady versus Maryland then produce that kind of material and the same applies to the application by the Springfield Police Department for the to the FBI for their assistance and also the the impeachment evidence that we talk about and that is the fact that we that defense finds out during a federal habeas discovery that that no jewelry had been taken from the house yet the prosecution at trial goes through great lengths to put Bert Lehman on the stand to talk about his mother's jewelry and the location of it what does that have to do with anything if no jewelry was taken well what it has to do with is to bolster and corroborate Hugh Banks's statement where the examining detectives got Hugh Banks to admit that jewelry had been taken and then we come to find out later no no jewelry was taken the only thing taken was Mr. Lehman's wallet so uh so between that and then Detective Kemper I think that I think that that the thing that no one nothing was taken other than Mr. Lehman's wallet that comes from one of the sons who said all we could identify that had been taken was the father's wallet I don't know how that I it's quite possible that family members would know whether her costume some of her costume jewelry had been taken the information that it was comes from the defendant I believe so I don't know what a great importance is attached to the fact that a son said all we could determine was taken was the wallet but your honor then why not ask the son on the witness stand at trial was any of your mother's jewelry taken and uh that that would have cleared that up but instead the reason for the questions is to corroborate the statement from Hugh Banks that it that it was that he took some jewelry and none it turns out later that it was not it was in Hugh Banks interest uh that there be a discrepancy there so I mean anybody was free to ask about it but it was not in the interest of Mr. Hugh Banks to bring up that fact name. Counselor, didn't your client make a statement at one point in time that he took some jewelry uh some costume jewelry from the house and subsequently discarded it in the woods? Uh my recollection of this I don't remember about the jewelry I do remember about uh the statement about discarding the knife uh in the woods or the murder weapon which he yeah I believe he did I believe his statement includes an indication that he did take some jewelry and that he disposed of it later. Um the point we're trying to make uh uh is that this is information that could have been used to impeach this particular witness and that this witness as you point out Judge Gibbons if this witnesses look was the jewelry taken or wasn't it is it missing is it not um then it's either corroborating or it's not corroborating the statement but as it is uh defense counsel could not make that strategic decision when not giving the information that there was no jewelry taken and so what it appears uh that defense is left with is the fact that oh well there must have been some jewelry taken because the defendant confessed and here's the son talking about his mother's jewelry well then why don't you tell us that there was no jewelry taken so that we can use that in a proper cross-examination. Um if it please the court I cognizant of my time and I I'd like to move to our other claim the one of ineffective assistance of counsel with the uh permission yes um uh this particular uh uh uh claim of ours is based upon the fact that a capital defense attorney has a duty to investigate the circumstances of his client's case and to explore all all avenues relevant to the merits of the case and the penalty all and not just some as uh as Judge Sutton summarized the testimony in the Rayshon Johnson case the mitigation testimony in Mr. Hughbank's case only scratched the surface. Uh counsel failed to investigate and collect Hughbank's records and those that they did collect there's question as to whether or not they were even read. Uh state post-conviction counsel assembled 28 sets of records concerning Hughbank's. Um there was a failure to adequately or even to interview at all family members. Both the father and the brother later submitted affidavits saying that if called upon they they would have testified. And isn't there isn't there an obvious reason not to um they both recanted those statements your honor and that would have been the perfect time to ask them about that. Um and and yes you're right that's that's how the trail originally led law enforcement to Mr. Hughbank's after a 10-year-old cold case. Um but but the point is that death penalty counsel cannot make a strategic decision without first uh being placed in a position to you don't know what you don't know. Um I had a high school baseball coach that always used to preach to us look you've got to put yourself in a position to win. You you can't get there unless you first have done the preliminary uh legwork to get you there and this counsel failed to do that. They did so I'm sorry go ahead. No no I thought there was uh conflicting um testimony about that and that the lawyers for your client claimed that they had endeavored to contact the um relatives and uh they wouldn't take the phone calls was uh what the lawyers claimed uh with regard to not contacting uh the uh relatives. So we kind of have conflicting uh information about that. It it is not uh restricted your honor to just those two that they had uh an opportunity to talk to but also to the ones that actually did uh testify as well. But it's the experts and the use of the experts that's most egregious and is pointed out primarily uh by the prosecutors closing argument to the jury during the penalty where they argued the very things that uh the defense had failed to demonstrate um in in order to attack the defense's case during the penalty phase is what the warden now uh tries to convince this court of is that well at least they did something. Well again that's a that's damning with faint praise that at least you did something. It's the very thing that we criticized you for uh at trial. Uh your honors I see my time is up and I will await my rebuttal time. Thank you. Ms. Moore. Thank you your honor. May it please the court. My name is Margaret Moore and I represent the warden Stuart Hudson in this case. As the on both his Brady claim and his ineffective assistance of counsel during the mitigation phase claim. This case is not one of first impression. This conviction and all lower court decisions have upheld since the day of trial including a unanimous Ohio Supreme Court and a district court consideration that stated any appeal would be objectively frivolous. The warden maintains specifically that the the position that the Brady claims are meritless. As my colleague talked about the six different categories of evidence that were brought forth in his brief are minimally what the warden would posit that they are minimally probative um as categories individually and then cumulatively as well. Uh the petitioner here has not shown that is more likely than not he would have received a different verdict with this evidence either singularly or cumulatively and he again overstates the probative nature of these categories of information. Specifically as to the other suspects at the time of trial of course 10 years following the uh murder there had been other suspects considered by the police at this time. Um well why shouldn't the uh police have had to disclose who the other suspects were? Your honor there were significant amounts of um information disclosed to the petitioner and his counsel to include newspaper articles not necessarily from the police but about these other suspects and what would um what was being investigated by the police at the time. Um while uh it is true that it wasn't turned over none of these suspects were ever um definitively linked to the homicides um by either admission fingerprints forensic evidence or eyewitnesses in a significant manner. So they weren't legitimate suspects um according to the case. What about this Hayes fellow? I'm sorry can you repeat yourself? What about Mr. Hayes? Apparently a um an inmate said that that Douglas Hayes confessed to the killing. So your honor as to that uh suspect there was another never any corroborating evidence other than that hearsay um confession that was found as to Mr. Hayes. So the police did not signify um legitimately think he was a uh suspect in this case. So was there ever was there ever any follow-up with respect to Mr. Hayes? So I believe there was as to the specifics of it I'm unsure but um I do know that the police had stated in their reports that there was no corroboration to include the trace evidence. There were no fingerprints or palm prints that could be traced to any of these suspects including Mr. Hubings which was turned over to Mr. Hubings in um the initial discovery. And I can give you that site um as to the trace evidence um that is in the record um number 166-2 and the page id is 3949. Um and what what that statement says in it is is in addition to numerous in addition excuse me numerous lifts were taken from the residents. Only a few were suitable for comparison none were matched to the defendant or anyone else. So in the initial discovery in this case Mr. Hubings knows knew from that that he was not traced to the crime scene by this evidence. Was Mr. was your adversary correct when he told us that Mr. Hubings was eliminated as a suspect by the fingerprint evidence? So I don't I don't think that characterization I don't think that characterization is correct. Being eliminated as a suspect wouldn't it be more would it be more accurate to say that his fingerprints were not matched to any that were found at the scene? I I would agree with that by the trace evidence to include the palm prints the bloody palm prints. However he was not eliminated as a suspect as he came forward later and confessed to the crime and was then investigated as well. Council with regard to the ineffective assistance of council issue um I think the council should have identified additional psychiatric experts um to testify in the defendant's behalf. I believe to bolster the testimony or the statements of Dr. De Silva who found that the defendant was bipolar and psychotic and suffering from addiction to various substances. What do you say about that contention? Well your honor the Dr. De Silva did testify that Mr. Hubings had bipolar disorder and substance abuse disorder. He had also diagnosed him with the schizoaffective disorder and the treatment of him of Mr. Hubings by Dr. De Silva was intensive in nature so he knew these things going into the testimony. The the warden's position is that a further expert to say the same thing is is often a double-edged sword. So on cross examination another expert would have been cumulative sorry on direct examination another expert would have been cumulative to say the same things that Dr. De Silva did. However on cross-examination the double-edged sword comes out. Did Mr. Hubings have these issues? Yes he did. Was he still capable of committing this crime? The potential answer there speculatively of course is yes he was capable of doing that. But our position is that more experts to say the same thing would have been cumulative and it was a reasonable trial strategy for Mr. Hubings trial counsel to not present more expert testimony. What about the absence of any indication at the mitigation phase of the sexual assaults on Mr. Hubings as a child? Your honor I the the reasoning that of that testimony didn't come forth is not apparent from the record but it is apparent that Dr. De Silva knew of the social history of Hubings and could have testified to that effect. He had treated his mother Loretta and his father Gary senior and knew of the family interaction from that treatment. So as to why it didn't come forward or how specifically necessary it was is not clear from the record. The warden's position is that that would have again been cumulative. We knew from the testimony that he was bipolar that he did suffer from substance abuse disorder and that these were things that happened to him during his lifetime from the testimony. It seems that being sexually assaulted when you're seven as I understand Mr. Hubings was and being sexually assaulted again I think it was when he was 15 correct me if I'm wrong that those would be very significant things that a jury would want to hear in mitigation. Why isn't that the case? Your honor I the warden's position is that not to discount that information but that it was known at the time of trial so the but we're talking about IAC on the part of the defense council not to present evidence of that mitigation. Yes your honor so not only did Mr. Hubings know it but it would be his potential to tell his attorney about it to ask about that stuff. So it is what the warden's position is is that it's still a reasonable trial strategy not to bring that stuff bring that information forward. What trial strategy would lead you not to present evidence that your client was molested when he was a child and as a mitigating factor why would that not be something any reasonable lawyer would do? Your honor it may be that they thought it was cumulative in nature to the bipolar and not as a source of the bipolar disorder. I don't know. It engenders a lot of sympathy in a reasonable person that some poor little kid was sexually assaulted. I don't. Maybe that's the cause you know they found him guilty maybe that's of his engaging in the murder. While I don't disagree that it is sympathetic in nature it is the warden's position that it would have been cumulative to the other evidence that was studied. Why was that not released to the defense? So the FBI report is a five-page report and it is a profile or report or a consultation summary. The first item on there is consultation summary. This is not an invitation from the detectives in Springfield Township to come down and investigate this crime. What happened is that one of the detectives and a lieutenant were at a training where the FBI was there presenting and they brought their information and the FBI agents that were there overviewed or reviewed the information that was brought to them. They did not go to the crime scene and investigate the crime scene or the homicides. They reviewed the information that was brought to them by the detectives and they wrote this report or profile or summary. In this summary there's no new information that was considered. It's all information that was given to the defense counsel in the form of pictures and information from the crime scene. There were also no witnesses that were interviewed by the FBI. It was a four-day training. I don't know if it was over the course of four days that they reviewed it or just during a portion of it. I hear you telling me how the FBI got the information that it utilized to make this profile but the profile suggests that the perpetrator of the crime a was not there to do a robbery and b was based on the nature of the stabbing wounds was somebody who was likely to have known the decedents and been very angry at them. So why isn't that Brady material? Your honor, the warden's position is while this in hindsight while looking back at this maybe could have been considered favorable to the defendant at the time of trial it is not material to it because of the confession. You keep relying on the confession and when you look at the confession there are real issues with the way that the police were leading Mr. Eubanks on and Mr. Eubanks was being provided details by the police whenever he said things that didn't seem to match what they wanted him to say. So if you keep going back to the confession and and is that the really the only thing that that you have to rely on? Well no your honor, while the warden's position is that the confession is integral in this conviction as as a piece of the evidence you the family members that the Lehmans had that were close to him the three sons also had very solid alibis for their time at or near the time of the crime. So if if you're considering what the FBI report says is a you know close family nature and you Len and the third son I can't remember his name right now they all had solid alibis they were either far away at the time or driving to somewhere at the time. So those close family members were considered as suspects and discounted because of their solid alibis. So the FBI report shows that you know the profile of this suspect potentially could be a close family member because of the graphic nature of the stab wounds and not wanting to leave a witness behind. So that may be favorable or have been favorable but it is not material because you can eliminate these other suspects as to the time and alibi for them. I want to I want to switch gears just a moment here. I want to make sure that my understanding is accurate as to what was provided and what was not. The of the categories of of evidence that Mr. Williamson says were not provided the trace evidence is the only evidence that was in fact provided. Am I correct about that? The the lack of your honor I I don't believe that the trace evidence was giving but given to the defendant but the lack of a tie to the defendant or anyone else was given. The results were given I don't mean that the finger the photos of the fingerprints or whatever but the the defendant knew the results of the examination of whatever print information was found at the scene. As well as any examination of hair or anything like that that might have been helpful right? Yes your honor there's no evidence testing done. But the other evidence that is complained about was not turned over and I gather that the sort of the overarching theory about why it was not other people was not really germane to the case against Mr. Hughbanks because the other investigation just sort of ran into dead ends. Is that right? And in some cases like for example eyewitness statements I mean the the state presumably concluded there were no eyewitness statements and that the statements that provided some evidence were ultimately discounted as not relating to the offense at all. Is that is that a pretty fair summary of what that what's going on there? I believe so yes your honor I believe that you know this is of course 10 years after the murders occur so it the detectives investigating this crime have run into dead ends on multiple occasions that it has been reported on pretty I mean it is this was a low crime area so it was reported on pretty high profile in this area. Well rightly or wrongly they concluded that if they had encountered a dead end in their investigation it wasn't Brady material to be turned over to the defense. Is that is that accurate? I think that's fairly accurate yes your If I cap the report the the profile that the FBI I'm not sure how that gets to be evidence in the case that's just an opinion of a law enforcement agency as to how something a law enforcement agency might not involved in the investigation analyzed who might be possible suspects. Okay is that a fair statement as to what that is? Yes your honor the the warden's position is that wouldn't be evidence nor would it be admissible in trial however. But it would lead to admissible evidence couldn't it? The warden concedes that it could have led to admissible evidence however in this case again the the personal nature of the crime that the FBI focuses on would have led to the alibis of these three sons. So does it fit with the other information that had just been discarded as useless because it had been tested out and find not to be exactly what the defendant now seeks to characterize it as? Yes your honor the warden's position is that the the the petitioner here is mischaracterizing that this information could have been material to his case when the warden's position is that it couldn't have been. Well what about these eyewitness statements so the eyewitnesses presumably are making statements as that are roughly contemporaneous with the event of the murders and they're saying different things like one of them saw somebody who of one race and another one saw somebody of another race and so forth. Why aren't those statements that would be helpful to the defense to know that there were people around at the time that identified other people who were possibly the murderer? Your honor so while the warden may have been favorable they're not material because they end to dead ends. In addition if you go back to Mr. Hubank's confession there are of course as my colleague pointed out there are inconsistencies in his confession but there are also a lot of consistencies to include the bloodhound that traced the towel matches the description of what Hubank said he did after the so that the house led the backyard of the house led to a creek or a river and he went up the river to an elementary school and that is the exact route that that bloodhound traced. So there are inconsistencies which is you know consistent with human nature to minimize what you may or may not have done in a confession and then he moves on to confessing to in more accurate detail as to he did it alone and these are the details of the crime and again this is the confession is 10 years after the crime. He's also would like to know that he's also confessing to detectives in Arizona that are not investigating detectives so it's not the detectives from that are questioning him in order to report back to the Springfield Township detectives. Council what is the current status I hate to phrase it like this but the current status of the Mr. Hubank's confession has he repudiated the entire confession or repudiated certain parts of it or where does where does he stand now with regard to to the confession? Well your honor that this is not a claim of actual innocence there there's no claim of actual innocence in the petition or the underlying facts or underlying case cases. However, I'm sorry I lost my train of thought so he hasn't he hasn't claimed actual innocence in this case. He also again with the trial strategy of the trial he did not claim that he was innocent in the trial or the mitigation phase. He made the state reach their burden for the guilt phase and then gave an unsworn statement saying that he did in fact commit these crimes during the mitigation phase. I realize that I know we're focused on the mitigation phase but I'm just wondering if he while even as to the mitigation phase this question would be relevant. Has he repudiated the confession or repudiated in part or not or where does all that stand? Your honor I don't recall a portion of the record where he has repudiated any portion of the confession but I would have to look more closely at the record to tell you the correct answer. All right so the are you confident of your answers with the public statement or through his counsel or something subsequent to that you would have to check? Yes your honor. Okay. And I would also like to address the the buys and gum case that my colleague talked about on in his initial argument. The of note in these two cases is that they relate to the same underlying crime. So the same murder is there two defendants two different cases but the murder is the same young man. So the difference between those two cases in this case is that there was one valid alternate suspect in that case. There was one suspect that confessed to multiple people and multiple people brought that forth to the police and he was investigated as a viable alternate suspect. In addition the attenuation in that case is significantly different to this case. So that case is investigated for both buys and gum you know the they're arrested and tried within you know a year they're I think arrested within three months of the murder versus the 10 years that this case has to do with. Additionally there's significant mental impairments in those cases. So both defendants were found to be not not incompetent on the lower level of the competency scale. So I think their IQs were both found to be under 70. If the court please I would like to move on to the mitigation and if it's ineffective assistance of counsel portion. Again as we talked about a little bit earlier the warden's position is that these the presentation of mitigation evidence and witnesses was fully reasonable strategic choices by trial counsel at that time. While his Mr. Cubanks' trial counsel didn't call his brother his uncle or his dad those are the people that had come forward to the police and and stated that he had confessed to these murders to them. And I I note that he did both the his brother and his father recanted afterwards. There's no indication that they did that before the mitigation phase of this trial. Even if they did the cross-examination would have included this information which is again a double-edged sword. So you know my brother confessed to me and then I recanted it but I'm the one that brought him forward to the police but why did I do that? And it's a normal or reasonable trial strategy to not present these witnesses to the court at that time. So the the warden's final position on on on these claims is that under the Strickland standard they're they're meritless as to the witnesses the investigation and what was presented at the mitigation phase of the trial. Pending any questions I'll go ahead and finish up. So again the warden would like to remind the court that this is not an actual innocence claim. The district court found that both these claims the Brady and the ineffective assistance council were were not up to the standard of both Brady or Strickland. And with that we would ask the court to find that same thing in this in this case and uphold the decision of the district court. Thank you. Thank you. Mr. Williams. Thank you your honors. Strategic choices resulting from lack of diligent preparation and investigation do not enjoy the presumption in favor of counsel. That's a quote from Wiggins versus Smith United States Supreme Court case. Once again you cannot make strategic choices if you have not put yourself in a position to make such choices. You have to present the jury with what you have in mitigation. And I think one of the questions to warden's counsel had to do with exactly what was the mitigation theory. What was the strategy in this case. And it would certainly seem to appear that the strategy was instead of to come to present to the jury a complete picture of the defendant's background and his mental social medical background. Instead what's presented is a box of picture puzzle pieces in hopes that the jury will correctly put them all together and make their own complete picture. No that's the duty of counsel to do that. Yes the fact that the defendant had been molested repeatedly as a seven year old and then later raped at the age of 15 would be critical. Those would be things you would develop with your testify. And once again we're back to this dichotomy between what the prosecutor argued in closing argument and now what they're saying in defense of counsel at trial. What specifically did the prosecutor argue at closing that you're emphasizing? During closing the prosecutor argued that Dr. Raju had not seen Hugh Banks in 12 years. That Raju had not tested Hugh Banks. That he did not have an opinion as to Hugh Banks's mental state at the time of the offenses. Also argued that Dr. De Silva did not know the facts of the case which was true. De Silva did not have an opinion as to Hugh Banks mental functioning at the time of the offenses. As Dr. De Silva testified what his mind was at the time of the crime. And he couldn't because he'd lost his file. And it's up to defense counsel to find that out beforehand. You have to go to see your expert and say can I see your file so I can review it, read it, and get you ready and prepped. And by the way did you know that this guy had been raped and molested repeatedly as a child. So just these guys coming in and saying oh yeah he's got bipolar that's grossly inefficient and incompetent. Dr. De Silva did testify and offer opinions and he had to refer to the hospital records in his own memory. But you didn't say he couldn't offer opinions because his file was lost. And he did in fact offer opinions. He did but my point your honor is that the opinions that he asked were not developed. They were not part of an overall strategic plan of a mitigation theory to put forward by the defense. So where these various pieces fit together. Instead it was a scattershot piecemeal approach. And again then when we get back to the family members as well the mother who did testify counsel doesn't even talk to her until the Sunday before she testifies. So there's a lack of not only a lack of a failure to investigate but a failure to prepare, a failure to get your witnesses ready. And the bottom line remains the same. Did petitioner receive a fair trial? In this case the penalty phase, the death penalty phase of this particular trial. Did it result in a penalty and a recommendation from this jury that we now after the fact can look back and say yeah we've got confidence in that. I would stress to this court I don't believe so and I hope that you agree with with us as well. And I thank the court for its time and its patience with us today. Thank you. Any further questions? Well we thank you both for your argument and the case will be submitted.